THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LIBERTY SURPLUS INSURANCE CORPORATION and LIBERTY INSURANCE UNDERWRITERS INC., <br><br> Plaintiffs, <br><br> v. <br><br> HOUSTON SPECIALTY INSURANCE COMPANY, <br><br> Defendant. | CASE NO. C20-1831-JCC <br><br> ORDER |

This matter comes before the Court on the parties' cross-motions for summary judgment (Dkt. Nos. 19, 23). Having thoroughly considered the briefing and relevant record, and finding oral argument unnecessary, the Court hereby DENIES the motions for the reasons explained herein.

**I.   BACKGROUND**

On February 12, 2016, Vaughan Rody was injured when a fastener securing a stairway handrail failed at his apartment complex. (Dkt. No. 18 at 2.) Mr. Rody filed a complaint in King County Superior Court, naming the apartment complex's ownership and management (collectively the "Equity Residential" entities) as responsible parties. *See Vaughan Rody v. EQR-*

*Mill Creek, LLC, et al.,* King County Superior Court, Case No. 16-2-13389-4 SEA (2016).[1] Rody sought damages for, *inter alia*, medical expenses and lost earnings. (*See* Dkt. No. 21-1.) He alleged that his injuries were caused by Equity Residential's inadequate maintenance and inspection of the handrail (although his complaint did reference Equity Residential's selection of inappropriate fasteners for the railing). (*See id.* at 5.) He did not name as responsible parties either the general contractor who constructed the apartment complex, Windsor Construction Company, or the subcontractor who installed the allegedly faulty fasteners and railing, Roninz Corp. d/b/a RailPro. (*See generally id.*)

       For two years, Rody's suit progressed without Windsor or RailPro's involvement. Then in May of 2018, Equity Residential tendered to Windsor and its insurers, Liberty Surplus Insurance Corporation and Liberty Insurance Underwriters, Inc. (together "Plaintiffs"), its defense and indemnity obligation resulting from the Rody suit. (Dkt. No. 21-3.) Plaintiffs initially denied the tender but reconsidered and accepted it on November 14, 2018 with a reservation of rights. (*See* Dkt. Nos. 21-7, 24-3.) They did so after confirming that Equity Residential was an additional insured on Plaintiffs' general and excess liability policies written to Windsor. (*See* Dkt. No. 21-7 at 9.)

       By then, the Rody trial was just over a month away. (Dkt. No. 21 at 3.) Plaintiffs attempted to settle the matter with Rody while concurrently working to determine who installed the railings. (*See* Dkt. No. 18 at 5.) They eventually concluded that RailPro did, while serving as Windsor's subcontractor. (*See* Dkt. No. 21-8.) Less than a month after accepting Equity Residential's tender, Plaintiffs tendered the Rody defense and indemnification obligation to RailPro, who at some point notified its insurer, Defendant Houston Specialty Insurance Company. (*See* Dkt. No. 21-10; *see also* Dkt. No. 20 at 16 (e-mail from RailPro to Defendant).) On December 14, 2018, with trial fast approaching and without a response from Railpro or

---

[1] The Court may take judicial notice of documents filed in Washington state court cases. *See Khazali v. Berns*, 2016 WL 4479915, slip op. at 1 n.3 (W.D. Wash. 2016) (collecting cases).

1 Defendant, Plaintiffs settled Rody's claims for $2,850,000. (*See* Dkt. Nos. 19 at 6, 24-2 at 18; *see also* Dkt. No. 21-12 (settlement agreement).) Plaintiffs separately agreed to reimburse Equity Residential $331,340.01 for its defense costs and the attorney fees it incurred pursuing coverage from Plaintiffs. (Dkt. No. 24-3 at 37–42 (settlement agreement and release).)

Defendant responded to Plaintiffs' December 2018 tender, denying it on February 13, 2019. (*See* Dkt. No. 21-17 (denial letter).) The stated bases included a lack of coverage for the events as described in Rody's complaint and a variety of coverage exclusions. (*Id.*) After unsuccessfully attempting to convince Defendant to reconsider, (*see* Dkt. No. 24-4 (subsequent correspondence)), Plaintiffs brought the instant suit in King County Superior Court, which Defendant removed to this Court, (*see* Dkt. No. 1). Plaintiffs asserted causes of action for contribution and subrogation. (Dkt. No. 18 at 6–8.) They also sought a declaratory judgment regarding Defendant's obligations in the Rody matter. (*Id.* at 8–9.)

The parties cross-move for summary judgment. (Dkt. Nos. 19, 23.)

## II.  DISCUSSION

Plaintiffs seek contribution and indemnity from Defendant for the amount it paid to settle the Rody matter. (*See* Dkt. No. 18 at 6.) They allege that, by contract, Equity Residential is an additional insured under the RailPro policy and, therefore, entitled to defense and indemnification from Defendant, which Defendant unlawfully denied. (*Id.*)

### A.  Legal Standard

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion seeking summary judgment, the Court views facts in the light most favorable to the nonmoving party and resolves ambiguity in that party's favor, but it must not make credibility determinations or weigh evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 255 (1986); *Bator v. Hawaii*, 39 F.3d 1021, 1026 (9th Cir. 1994). A fact is material if it "might affect the outcome of the suit," and a dispute of fact is genuine if "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. On cross-motions for summary judgment, the Court evaluates each motion independently, giving the nonmovant in each instance the benefit of all reasonable inferences. *Lenz. v. Universal Music Corp.*, 815 F.3d 1145, 1150 (9th Cir. 2016).

Under Washington law, an insurer's "duty to defend arises when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage." *Nat'l Sur. Corp. v. Immunex Corp.*, 297 P.3d 688, 691 (Wash. 2013) (internal quotations omitted). "[This] is separate from, and broader than, the duty to indemnify," which "hinges on the insured's actual liability to the claimant and actual coverage under the policy." *Hayden v. Mut. of Enumclaw Ins. Co.*, 1 P.3d 1167, 1170 (Wash. 2000). In either instance, "[the insured] bears the initial burden of proving coverage under the policy" and "[t]he insurer bears the burden of establishing an exclusion to coverage." *Pleasant v. Regence BlueShield*, 325 P.3d 237, 243 (Wash. Ct. App. 2014) (internal citations omitted); *see also Viking Ins. Co. of Wisconsin v. Hill*, 787 P.2d 1385, 1388 (Wash. Ct. App. 1990).

**B.     Contribution**

Plaintiffs seek judgment as a matter of law on their contribution claim. (Dkt. No. 19 at 20.) "Equitable contribution refers to the right of one party to recover from another party for a common liability." *Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*, 191 P.3d 866, 872 (Wash. 2008). "In the context of insurance law, contribution allows an insurer to recover from another insurer where both are independently obligated to indemnify or defend the same loss." *Id*.

Defendant argues that it need not contribute because Plaintiffs have not met their burden to establish coverage under RailPro's policy and, even if they had, Plaintiffs released all rights to contribution through a mutual release agreement with Equity Residential. (Dkt. No. 23 at 12–13.)

1.     Coverage Under RailPro's Policy

In arguing that Plaintiffs fail to meet their burden to establish coverage, Defendant cites the Rody complaint's lack of allegations triggering a duty to defend and the application of the

selective tender rule. (Dkt. No. 23 at 16.)

        a.    *Duty to Defend*

Defendant concluded when denying Plaintiffs' tender that it had no duty to defend because neither Windsor nor Railpro were named as defendants in the Rody action. (*See* Dkt. No. 21-17 at 3 (Defendant's denial letter).) This determination may have been reasonable at that time—the parameters of the duty to defend are generally determined from the "eight corners" of the policy and the underlying complaint. *Expedia, Inc. v. Steadfast Ins. Co.*, 329 P.3d 59, 64 (Wash. 2014). But it now appears to have been incorrect. The complaint's references to the use of inappropriate fasteners, (Dkt. No. 21-1 at 5), which Defendant should have known may have been selected and installed by RailPro, were sufficient to establish a duty to defend. "Only if the alleged claim is *clearly* not covered by the policy is the insurer relieved of its duty to defend." *See Truck Ins. Exch. v. Vanport Homes, Inc.*, 58 P.3d 276, 282 (Wash. 2002) (emphasis added).

Moreover, at the time of its denial, Defendant knew that Plaintiffs were Windsor's insurers and could be liable to Rody only to the extent of Windsor's fault. (*See* Dkt. No. 21-10 at 2 (Plaintiffs' tender to RailPro describing the alleged role of the handrail's failure in. Rody's injuries).) And it stands to reason that RailPro, as Windsor's sub-contractor responsible for installation of the railing, could have been implicated in Rody's suit. This rational conclusion, based on the tender, is relevant extrinsic evidence in considering Defendant's duty to defend. *See Expedia, Inc.*, 329 P.3d at 65. Given that the Rody complaint faulted the selection of inappropriate fasteners, and that Railpro installed the fasteners in question, a trier of fact could reasonably conclude that the Rody complaint, 'construed liberally,' alleges facts that triggered coverage under Defendant's policy.

Therefore, the Court cannot grant summary judgment to Defendant on Plaintiffs' contribution claim, at least to the extent it is based on Plaintiffs' failure to put forth evidence supporting a duty to defend.

ORDER
C20-1831-JCC
PAGE - 5

b.      *Selective Tender*

Defendant asserts that, irrespective of whether the Rody suit triggered coverage, the selective tender rule bars Plaintiffs' contribution claim. (Dkt. No. 23 at 16.) "[C]ontribution is a right of the insurer and is independent of the rights of the insured." *Id.* According to the selective tender rule, in instances of settled insurance claims, the insurer from which contribution is sought must have "a *legal obligation* . . . to provide [a] defense [or] indemnify coverage for the . . . claim or action *prior to [the date of settlement]*." *Mut. of Enumclaw Ins. Co.*, 191 P.3d at 872 (alterations in original, internal citations omitted). This obligation is not triggered "until a claim for defense or indemnity is tendered" by the insured. *Id.* at 873 (footnotes omitted).

Defendant points out, and it appears undisputed, that the December 2018 tender was made by Plaintiffs—not by an insured. (*See* Dkt. No. 19 at 5–6; *see also* Dkt. Nos. 21-10 (Plaintiffs' December 3, 2018 tender letter to RailPro), 21-11 (Plaintiffs' December 14, 2018 follow-up e-mail to RailPro).) But Plaintiffs present evidence that any insured's right of recovery, which would necessarily include Equity Residential as an additional insured, transferred to Plaintiffs by virtue of the terms of Plaintiffs' commercial general liability policy and would have been effective at the time of tender. (*See* Dkt. No. 21-21 at 2.) This is sufficient to preclude summary judgment for Defendant on Plaintiffs' contribution claim based on the selective tender rule.

2.      Significance of Mutual Release Agreement

In January 2019, Equity Residential's coverage counsel sent Plaintiffs a letter seeking reimbursement under *Olympic Steamship*[2] for attorney fees it incurred to obtain coverage after Plaintiffs initially denied coverage. (*See* Dkt. Nos. 23 at 10, 26-1 at 61.) Those parties eventually came to terms and signed an October 24, 2019 mutual release. (*See* Dkt. No. 23 at 10–11; *see*

---

[2] *Olympic S.S. Co., Inc. v. Centennial Ins. Co.*, 811 P.2d 673, 681 (Wash. 1991), provides for the reimbursement of legal fees incurred to obtain coverage when an insured prevails on issues involving either a duty to defend or indemnify.

*also* Dkt. No. 24-3 at 37–42 (release).) It included the following language:

> [Plaintiffs] further agrees [sic] to release and forever discharge Insureds and their insurers from and against any all claims, demands or suits of any kind, unknown, or unknowable, arising from or in any way related to the Claim, Occurrence, or the Underlying Action, including any claim for alleged contribution or subrogation.

(*Id.* at 39.) Defendant argues that this agreement bars Plaintiffs' contribution claim, based on Equity Residential's alleged status as an additional insured. (Dkt. No. 23 at 14–15.)

Plaintiffs counter that Defendant is misinterpreting the provision above; the parties intended to release only Equity Residential's *primary insurers*—not Defendant—from future contribution and subrogation claims. (Dkt. No. 30 at 18–19.) Plaintiffs cite an e-mail they received from Equity Residential's coverage counsel while negotiating the release, indicating that Equity Residential did not want "*their* insurers exposed to a contribution claim." (Dkt. No. 26-1 at 69 (emphasis added).) Consistent with the "context rule," the Court can consider this extrinsic evidence to gauge the parties' intent. *KIC, LLC v. Zhejiang Dicastal Hongxin Tech. Co., Ltd.*, 2021 WL 3861635, slip op. at 6 (W.D. Wash. 2021) (citing *Berg v. Hudesman*, 801 P.2d 222, 228 (Wash. 1990)). And this evidence is sufficient to establish a genuine issue of fact regarding the import of this agreement. Therefore, this is not a basis to grant summary judgment to Defendants.

For the reasons described above, summary judgment is DENIED on Plaintiffs' contribution claim. Genuine issues of fact remain, amongst other things, regarding RailPro's culpability for the faulty railing. (*See* Dkt. Nos. 21-9 (expert report); 24-3 at 5 (Plaintiffs' claim file notes); 24-3 at 30–31 (communications from Windsor regarding installation of the railing); 25-3 at 2–5 (scope of work provided to RailPro); 26-1 at 2–4, 54–55, 57–65 (dealings between Equity Residential and Plaintiffs).)

C.  **Subrogation**

Plaintiffs also seek judgment as a matter of law on their conventional and equitable subrogation claims. (Dkt. No. 19 at 20–23.) "Subrogation is the equitable doctrine the essential

purpose of which is to provide for a proper allocation of payment responsibility. It seeks to impose ultimate responsibility for a wrong or loss on the party who, in equity and good conscience, ought to bear it." *Mahler v. Szucs*, 957 P.2d 632, 640 (Wash. 1998). Thus, subrogation is "[t]he principle under which an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy." *Mut. of Enumclaw Ins. Co.*, 191 P.3d at 874. Conventional subrogation arises by contract, whereas equitable subrogation arises by operation of law. *Id*.

Defendant asserts it has no subrogation obligation for largely the same reasons as it has no contribution obligation, and for the additional reason that tender was late. (Dkt. Nos. 23 at 13–35, 34 at 1–12.) As indicated above, summary judgment is not warranted for either party on Plaintiffs' contribution claim. *See supra* Section II.B. The same applies to Plaintiffs' subrogation claims. There exist genuine issues of fact regarding RailPro's role in selecting and installing the fasteners for the handrail at issue, as well as what role those fasteners may have played in Rody's injuries. *Id.* And Defendant's argument regarding late tender is not one that can be resolved at this stage in the litigation, as the issue of prejudice is best left to the finder of fact. *See Mut. of Enumclaw Ins. Co.*, 191 P.3d at 876 ("Whether or not late notice prejudiced an insurer is a question of fact, and it will seldom be decided as a matter of law.").

Summary judgment is DENIED on Plaintiffs' subrogation claims.

### D.     Declaratory Judgment

Plaintiffs also seek a declaratory judgment that Equity Residential and Windsor Construction are additional insureds under RailPro's policy with Defendant. (Dkt. No. 19 at 15.) For the same reasons that the Court cannot find, as a matter of law, for either party on Plaintiffs' contribution and subrogation claims, it cannot determine whether a declaratory judgment is warranted. There remains genuine issues of material fact regarding RailPro's culpability in Rody's injuries. *See supra* Section II.B. Until that issue is resolved, the Court cannot ascertain

whether, as a matter of law, Equity Residential and Windsor were additional insureds under RailPro's policy. (*See* Dkt. No. 23 at 21–22.) This is because the additional insured provision is triggered only to the extent of actionable conduct by RailPro, the original insured on the policy. And this issue has not yet been resolved.

Summary judgment is DENIED on Plaintiff's declaratory judgment claim.

**III.   CONCLUSION**

For the foregoing reasons, the parties' cross-motions for summary judgment (Dkt. Nos. 19, 23) are DENIED.

DATED this 19th day of January 2022.

John C. Coughenour
UNITED STATES DISTRICT JUDGE